IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAMIEN TYREE DUPREE, #334-456      *
                    Plaintiff,
        v.                         *    CIVIL ACTION NO. PJM-10-3076

KAREN DEAN, et al.,                *
                    Defendants.
                                 ***

**<u>MEMORANDUM OPINION</u>**

Pending are Defendants Karen Dean, Corporal Tyler, Lieutenant Barnes, and Sergeant Cook's Motions to Dismiss or for Summary Judgment and Plaintiff's responses.  ECF Nos. 19, 23, 24 & 26.  Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2011).

**Background**

Plaintiff states that while incarcerated at the Eastern Correctional Institution ("ECI") he mailed confidential information to his attorney which was confiscated by Division of Correction mailroom employees.  Plaintiff states Corporal Tyler opened and read the letter, which was then read and forwarded by Lieutenant Barnes, Sergeant Cook of the Maryland State Police ("MSP"), and Assistant States Attorney Karen Dean.  ECF No. 1.

The uncontroverted record reveals that while incarcerated at ECI Plaintiff was charged, along with two other inmates, with the murder of a fourth inmate.  Ultimately, Plaintiff entered an *Alford*[1] plea to involuntary manslaughter and received a ten year term consecutive to the sentence he was then serving.  While the murder was under investigation, a letter addressed by Plaintiff to his attorney was turned over to State Police and ECI's Internal Investigation Unit by ECI staff.  The

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

1

letter was included in the State Police investigative file and ultimately copied and provided to counsel for all three inmates charged with the homicide.  ECF No. 19, Ex. A, B, & D.

Captain Daniel Barnes is the gang intelligence officer at ECI.  ECF No. 18, Ex. A.  Barnes was involved with an investigation by the MSP of a homicide that occurred at ECI.  Plaintiff and two other inmates were charged with the homicide.  Barnes's role was to collect information from within ECI and pass it on to the MSP and IIU investigators.  As part of the investigation a mail cover was initiated as to all three suspects' mail.  Barnes did not personally inspect or seize Plaintiff's mail.  He did receive a copy of the seized mail items from mailroom personnel including the letter at issue in this case.  *Id*.  Nowhere on the envelope or in the letter seized is the letter identified as "legal mail" nor is the addressee, Patricia Harvey, identified as an attorney.[2]  *Id*.   The letter contains no confidential or attorney-client privileged information.  Rather, the letter asks for a copy of the statement of facts, discovery, and names of the state witnesses.  *Id*.

Assistant State's Attorney Karen Dean served as prosecutor in Somerset County, Maryland where ECI is located.  In preparing the case Dean received a binder from MSP Detective Sergeant Scott Cook containing the MSP investigative file for the homicide with which plaintiff was charged.  The binder contained the letter at issue here.  As a part of routine discovery, the entire contents of the binder were photocopied and provided to all defense counsel.  Patricia Harvey was the Assistant Public Defender representing plaintiff in the proceedings.  Dean was not then acquainted with Harvey whose office was in Wicomico County.  *Id*., Ex. B.  Harvey contacted Dean and advised that a piece of legal mail from Plaintiff to Harvey was included in the discovery provided to counsel.  Dean located the letter among a number of letters provided by MSP investigators as a result of the mail cover. Most of the letters were written by one of the co-defendants to friends or relatives and

---

[2] Plaintiff does not dispute that his mail was not marked as legal mail.  Rather he maintains that all DOC employees

openly disclosed the facts of the homicide.  Dean had not previously noticed that Plaintiff's letter was addressed to his attorney.  Harvey requested Dean destroy the copy of the letter in the file and that she contact the other defense attorneys to request they do the same.  Dean complied.

Dean avers that to the best of her recollection, nowhere in the letter was Harvey identified as an attorney. Moreover, Dean recalls that the letter merely requested a copy of the discovery in his case and contained no information as to the facts of the case or any defense strategy.  *Id.*

Major Tyler avers that he is the evening shift commander at ECI.  While he recalls the homicide investigation, he played no direct role in withholding mail as part of the investigation and did not personally withhold or handle any of plaintiff's mail.  *Id*, Ex. C.

Sergeant Cook of the MSP was assigned to investigate a murder at ECI.  As noted above, as part of the investigation a mail cover was initiated as to Plaintiff and two other inmates.  ECF No. 24, Ex. 1.  ECI personnel collected information regarding each inmate and forwarded it to Cook for use in the investigation.  Cook reviewed and organized the materials into a binder.  The materials included copies of incoming and outgoing non-legal mail and gang related materials regarding Plaintiff.  *Id.* The binder, which also included MSP's investigate case file, was forwarded to the State's Attorney for Somerset County for use in the prosecution of Plaintiff.  Cook avers that to the best of his information the binder did not contain any confidential or privileged information.  Cook was later contacted by Dean and informed that the binder contained a letter which was alleged to have been legal mail addressed to Plaintiff's criminal defense attorney, Patricia Harvey.  *Id.*  On August 31, 2010, Cook received a letter from Dean instructing him to destroy the letter from Plaintiff to Harvey.  *Id.*, Ex. 1, Attachment 1.  Cook complied with the directive.

---

should have known that the addressee was his attorney since she had visited him repeatedly.  ECF Nos. 23 & 26.

**Standard of Review**

Under Fed. R. Civ. P. 56(a):

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.   In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla"of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## Discussion

A.    Supervisory Liability

Plaintiff's complaint against Major Tyler is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens

5

like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Major Tyler, the shift commander, that resulted in a constitutional injury. Accordingly, his claims against Tyler shall be dismissed.

B.      Prosecutorial Immunity

Maryland's States Attorneys are quasi-judicial officers who enjoy absolute immunity when performing prosecutorial, as opposed to investigative or administrative functions. *See Imbler v. Pachtman*, 424 U.S. 409 (1976). Absolute immunity is designed to protect *judicial process*; thus the inquiry is whether a prosecutor's actions are closely associated with judicial process. *See Burns v. Reed*, 500 U.S. 478 (1991). Advocacy functions including "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state," *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), are protected by absolute immunity. *See Burns v. Reed*, 500 U.S. 478 (1991). Providing discovery to defense counsel are acts undertaken by the prosecutor in preparing the case for trial. Thus Dean is entitled to absolutely immunity for the inadvertent disclosure of Plaintiff's letter.

C.      Failure to Exhaust

The Court must next examine Defendants' assertion that Plaintiff's case should be dismissed as to Division of Correction employees Corporal Tyler and Lieutenant Barnes due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions

under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner

has ten calendar days to file an appeal with the Commissioner of Correction.  If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO").  *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

Plaintiff indicates in his Complaint that he did not even initiate administrative review of his claim by filing an administrative remedy request.  ECF No. 1.  In his response to the dispositive motion he claims that he "never knew ARP deal with a federal lawsuit." ECF Nos. 23 & 26.  Plaintiff clearly has failed to exhaust available administrative remedies and as such his complaint is subject to dismissal as to Defendants Tyler and Barnes.

D.    Interference with Legal Mail

Prisoner claims regarding legal mail are typically analyzed as access to court claims.  To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S.343, at 351 (1996).  Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978).  In *Lewis v. Casey*, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation. *Lewis*, 518 U.S. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim.  *Id*. at 354.  Rather, the *Lewis* Court concluded that *Bounds v. Smith*, *supra*, stood essentially for the proposition that prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their

sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 354.

Plaintiff has advised of no actual injury or specific harm which he has suffered as a result of one letter, not identified as legal mail, and containing no privileged information, being opened outside of his presence.  Plaintiff was represented by counsel in the criminal proceedings and voluntarily entered a plea to involuntary manslaughter.  Moreover, counsel had the letter expunged from the criminal file.  The only evidence Plaintiff offers of injury are conclusory statements that the conduct of Defendants violated his constitutional rights. *See Morgan v. Montanye*, 516 F.2d 1367 (2d Cir. 1975) (single interference did not violate Sixth Amendment); *see also Gardner v, Howard, et al.*, 109 F.3d 427, 431 (8th Cir. 1997) ("isolated, inadvertent instance of prison personnel opening incoming mail marked confidential "without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

## Conclusion

For the aforementioned reasons, Defendants' Motions, construed as motions for summary judgment, shall be granted.   A separate Order follows.


                                                    _____/s/_____
                                                    PETER J. MESSITTE
February 1, 2012                                    UNITED STATES DISTRICT JUDGE